**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
                                         :

SHANNON HIGH-BASSALIK,          :

                          :     Civil Action No.

                 Plaintiff,    :

                          :

                 v.           :

                          :     **COMPLAINT**

EHAB AL SHIHABI,             :

in his individual and professional capacities,  :     **Jury Trial Demand**

                          :

                 Defendant.    :

                          :
------------------------------------------------------------X

       Plaintiff Shannon High-Bassalik ("Ms. High-Bassalik" or "Plaintiff"), by and through her

undersigned counsel, Wigdor LLP, as and for her Complaint in this action against Defendant

Ehab Al Shihabi ("Al Shihabi" or "Defendant"), hereby alleges as follows:

<u>NATURE OF THE CLAIMS</u>

       1.     Al Jazeera America ("Al Jazeera" or the "Company") has stated that it was

founded in America on the principles of offering "unbiased, fact-based, in-depth stories of U.S.

and international news," while also being guided by a "mission" to have "integrity and respect

guide our conduct internally and externally."

       2.     Unfortunately, reality presents a very different picture of Al Jazeera – one where

truth and objectivity are set aside to cater to the Company's anti-Israel and ethnocentric

prejudices, as espoused brazenly by Defendant Al Shihabi, Al Jazeera's Chief Executive Officer

and Executive Director for International Operations during the tenure of Ms. High-Bassalik's

employment.

       3.     As ratings continued to fall short of the expectations of management, Al Shihabi

and the Company openly decided to abandon all pretense of objectivity in favor of putting its

Arabic prejudices front and center, openly demanding that programs be aired that vented vitriol and anger at ostensibly anti-Arabic countries such as America and Israel.

4.      Dedicated journalists such as Ms. High-Bassalik were told by Company management that if this abandonment of journalistic integrity led people to deem them "terrorists," that was an acceptable risk for the Company to take.

5.      For example, in a meeting with news producers, Al Jazeera's corporate management in Qatar outrageously stated that the Company's journalists should understand that many in the Arab world believed that the attacks on America on September 11, 2001 were staged by the CIA to allow America to wage an unjust war on the Arab world, and that this understanding should inform their reporting.

6.      Also following this directive, employees made inflammatory statements such as "Israelis are like Hitler," and "Anyone who supports Israel should die a fiery death."   Rather than discipline these offending employees, the Company amply demonstrated its support and true feelings by terminating the employment of individuals who dared stand up and complain about such blatantly hateful views, especially coming from a news organization that held itself out as unbiased.

7.      It is little wonder, given this shocking editorial mandate that ran through the Company, as expressed by Al Shihabi, that Al Jazeera's unlawful and discriminatory behavior extended to its treatment of its employees.

8.      Throughout Ms. High-Bassalik's employment, Al Shihabi and, by extension, the Company, made their preference for Arabic and male employees known, whereas female and non-Arabic employees were treated unfavorably and with condescension and disrespect.

9.      Individuals of preferred ethnicity and/or national origin who had no more experience than managing a local Sunglass Hut were promoted to key leadership positions, while more qualified non-Arabic, American and female employees consistently saw their performance undermined and their professional responsibilities taken away from them.

10.     Any employee who objected to these discriminatory practices, including Plaintiff, were marginalized, belittled, and ultimately terminated.

11.     Before instituting the instant action, Plaintiff brought a lawsuit against both the Company and Defendant Al Shihabi in the United States District Court for the Central District of California based on the provisions of the Employment Agreement signed by Ms. High-Bassalik dated July 15, 2013, which states: "this Agreement will be governed by the internal laws of the State of New York (without regard for conflict of laws provisions).  [Plaintiff] irrevocably consents to the jurisdiction and venue of the federal, state and local courts within the State of California."

12.     In papers submitted to the California court requesting that it dismiss the claims against him, Defendant Al Shihabi specifically conceded and argued that he was not a party to the Employment Agreement, and therefore could not be bound by its terms.  Defendant Al Shihabi further argued that the California courts did not have personal jurisdiction over him and that the courts within the State of New York would be a more appropriate venue for claims against him.

13.     As a result, Plaintiff  has instituted this action before this Court for declaratory, injunctive and monetary relief to redress the unlawful discrimination, hostile work environment and retaliation committed against Plaintiff throughout her employment on the basis of her gender, race, ethnicity and national origin in violation of Section 1981 of the Civil Rights Act of

1866, 42 U.S.C. § 1981 ("Section 1981"), the New York State Human Rights Law, New York Executive Law §§ 290 *et seq.* ("NYSHRL") and the New York City Human Rights Law, New York City Administrative Code §§ 8-101 *et seq.* ("NYCHRL").

## JURISDICTION AND VENUE

14.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's rights under Section 1981.  The Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. § 1367(a).

15.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant Al Shihabi is a New York resident and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

16.     Alternatively, venue is proper in this district pursuant to 28 U.S.C. §1332 because complete diversity exists between all of the parties and the amount in controversy in this action exceeds $75,000.

## PARTIES

17.     Plaintiff Shannon High-Bassalik is a former Senior Vice President of Programming and Documentaries at Al Jazeera.  She is a resident of the State of Connecticut, and at all relevant times met the definition of an "employee" under all applicable statutes.

18.     Defendant Ehab Al Shihabi is a resident of the State of New York and is the former Chief Executive Officer of Al Jazeera, and the Executive Director for International Operations for Al Jazeera.  At all relevant times, Defendant Al Shihabi supervised the employment of Plaintiff, and, in that role, he had the authority to discipline and fire Plaintiff, direct her work activities, assign her job responsibilities and monitor her performance.

Accordingly, at all relevant times, Defendant Al Shihabi was an "employer" within the meaning of all applicable statutes.

## PROCEDURAL REQUIREMENTS

19.     A copy of this Complaint will be concurrently served on both the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of the New York City Administrative Code.

20.     Any and all other prerequisites to the filing of this suit have been met.

## FACTUAL ALLEGATIONS

### Background

21.     Ms. High-Bassalik commenced her employment with Al Jazeera in or around July 2013, as a Senior Vice President of Programming and Documentaries.

22.     Before commencing her employment, Ms. High-Bassalik was forced to sign an Employment Contract with Al Jazeera (the "Contract"), the non-compensation terms of which she was told were not subject to negotiation.

23.     In fact, Defendant Al Shihabi explicitly informed Ms. High-Bassalik that if she even attempted to negotiate any of the terms of the Contract, her employment offer would be summarily withdrawn and she would forfeit any opportunity to work for Al Jazeera.

24.     With this insistence that she had no choice in the matter, Ms. High-Bassalik signed the Contract at Defendant Al Shihabi's insistence.

25.     Under the terms of the Contract, Ms. High-Bassalik was guaranteed three years of employment with Al Jazeera, and payment of her salary for the entire duration of that period, irrespective of whether her employment was terminated by the Company.

26.     Before joining Al Jazeera, Ms. High-Bassalik enjoyed a tremendously accomplished, award-winning and successful career in the television and journalism industries, including at CNN, NBC and MSNBC.

27.      Throughout her tenure with Al Jazeera, Ms. High-Bassalik was universally praised for her leadership, vision and integrity.

28.     Both her direct reports and colleagues in management recognized Ms. High-Bassalik's commitment to quality, honest journalism, as well as her role as a supportive coworker to her fellow employees at Al Jazeera.

29.     In fact, Ms. High-Bassalik only agreed to join Al Jazeera because of the Company's purported support for the kind of truthful and objective journalism that had been a hallmark of her career.

**Defendant's Unlawful Discrimination**

30.     Soon after commencing her employment, as viewership failed to meet the Company's expectations, Ms. High-Bassalik was shocked as Al Jazeera abruptly pivoted away from objectivity and towards the kind of biased reporting that Ms. High-Bassalik had avoided throughout her career.

31.     Worse still, from Ms. High-Bassalik's point of view, was that the Company's abandonment of journalistic objectivity was done not only to advance a particular political viewpoint, but to discriminate on the basis of race/ethnicity and national origin and to advance a pro-Arabic/Middle Eastern agenda, often at the expense of Jewish people.

32.     By way of example only, during and shortly after the Israel/Gaza conflict in 2014, the news and programming department was explicitly instructed to favor a particular brand of Middle Eastern point of view and cast Israel as the villain, creating taglines such as "Gaza under

Fire," and airing films called "Shujayea: Massacre at Dawn" and "The Day Israel Attacked America."

33.     In fact, Al Jazeera's parent company, Al Jazeera Media Network, explicitly told the Company's employees that their mission was to "bring the Arab/Muslim perspective" to America.

34.     For example, the Company's producers were told on one occasion that much of the Arab world believed that the horrific attacks perpetrated on America on September 11, 2001 were actually staged by the CIA to create a false justification for a war against the Arab world following the end of the Cold War.

35.     This outrageous, outlandish and patently offensive statement was held out as an example of the kind of viewpoint that Al Jazeera, a global news organization, should keep in mind as it decided on the tone and content of its reporting.

36.     On another occasion, the head of the Company's Investigative Unit shockingly tweeted out that "Israelis are like Hitler."

37.     When the Company's producers, including Plaintiff, tried to air balanced news reports, they were accused by management of being "very biased for Israel."

38.     As this overtly anti-Israel stance spread and began encroaching on the programs and documentaries for which Ms. High-Bassalik was responsible, she repeatedly raised her objections to management.

39.     For example, she told her supervisors that Al Jazeera was actively advocating a discriminatory attitude towards people who were not Middle Eastern and/or Arabic, which was a flagrantly improper position for any company to take, especially what was supposed to be an objective news organization.

40.     Ms. High-Bassalik also complained about the fact that the Company's messages advocating purportedly Arabic viewpoints over all others were in violation of its cable contracts in America, which required Al Jazeera to remain neutral in its positions.

41.     She made clear that Al Jazeera Media Network's management in Doha should not have been dictating the coverage of its supposedly independent American subsidiary.

42.     Defendant Al Shihabi responded to these complaints by stating that the Company was not Al Jazeera America but rather "Al Jazeera *in* America," and by screaming at anyone who objected to these viewpoints that they were no longer welcome at the Company.

43.     Defendant Al Shihabi admitted to Plaintiff that he was pushing the Company to abandon all pretense of neutrality and advocate what he saw as being a pro-Arabic viewpoint because he thought it would please "Doha," referring to Al Jazeera's ownership in Qatar.

44.     In fact, during a meeting with a high-ranking executive of Al Jazeera in Qatar, Ms. High-Bassalik was lectured about the fact that she and the Company's other non-Arabic employees were not being "brave" enough with their stories.

45.     Indeed, she was specifically told that she should advocate the Arabic point of view in stories, and that if "they call us terrorists, so be it."

46.     She was also instructed that Al Jazeera should violate its cable contracts by airing programs in Arabic with English subtitles and by showing programs produced and originally aired on Al Jazeera Arabic, Al Jazeera English, and which were available online.

47.     To demonstrate just how committed the Company was to advocating an "Arabic" point of view over all others, during this time period, Al Jazeera aired programs targeting the United States and disfavored governments with relations with Israel such as that of Egypt.

8

48.     In a candid admission of Al Jazeera's true purpose, the Company's employees were told that Al Jazeera was purchased for the purpose of bringing the Arabic viewpoint to America.

**Hostile Work Environment**

49.     The Company's discriminatory preferences for Arabic/Middle Eastern individuals in its employment practices.

50.     Glaringly, in 2014, Ms. High-Bassalik was at a meeting of the Company's executives, led by Defendant Al Shihabi, during which the performance ratings of individual employees were discussed.

51.     As the meeting went on, Ms. High-Bassalik was shocked as it became clear that Al Jazeera was systematically upgrading the performance ratings of Arabic employees, while simultaneously downgrading the ratings of its non-Arabic employees.

52.     When a non-Arabic, American employee objected to this blatantly discriminatory practice, the Company's Chief Legal Officer ("CLO"), David Harleston, told him that any criticisms of the process favoring Arabic employees were not welcome at Al Jazeera.

53.     Al Jazeera also routinely and explicitly discriminated in favor of Arabic employees in its hiring and promotion practices.

54.     For example, on one occasion, Al Jazeera's marketing department was told that it would have to hire an Arabic male for a managerial position, despite the fact that the sum total of his previous work experience was working as a retail manager at a Sunglass Hut.

55.     On another occasion, Plaintiff was told that she would have to hire an Arabic woman to fill the position of Producer, despite the fact that a supposed hiring freeze was in place

at the Company, and despite the fact that this Arabic employee had no prior experience that would qualify her for the role.

56.     When Ms. High-Bassalik complained about this, pointing out that Al Jazeera had several highly qualified non-Arabic employees who had been waiting for a Producer position to become available, her complaints were summarily dismissed and she was told that she had no say in the matter.

57.     Another Arabic employee was promoted to the position of Senior Vice President despite spending the last 15 years as a freelance Video Editor.

58.     Soon after he was hired, this employee, taking his cue from Al Jazeera's management, displayed his vile and unlawful animus towards employees of non-Arabic descent, and stated, "Anyone who supports Israel should die a fiery death."

59.     In a clear message to the Company's non-Arabic employees that any kind of dissent would not be tolerated, not only was this employee not disciplined for his outrageous and vile statement, Al Jazeera actually terminated the employment of the non-Arabic employee who complained about this overt expression of discriminatory sentiment.

60.     On another occasion, Defendant Al Shihabi told Plaintiff that she would have to remove a qualified non-Arabic American from an assignment in favor of a less-qualified Arabic male.

61.     Defendant and the Company also discriminated against its female employees throughout Ms. High-Bassalik's employment in favor of male employees.

62.     Defendant and the Company repeatedly diminished the responsibilities of female employees, while at the same time promoting less-qualified male employees to fill the same positions.

63.     Defendant Al Shihabi in particular targeted Al Jazeera's female employees for discriminatory treatment.

64.     For example, Defendant Al Shihabi would undermine the performance of female employees by giving them inconsistent instructions, as well as unreasonably short deadlines, and then publicly yelling at them when they were not able to perform under these unfair circumstances.

65.     When female employees questioned Defendant Al Shihabi's decisions, he would often belittle and scream at them, threatening that he would terminate their employment unless they fell into line.

66.     Defendant Al Shihabi would further interfere with the professional responsibilities of female employees, including Ms. High-Bassalik, by excluding them from important meetings directly related to their responsibilities.

67.     Defendant Al Shihabi also would refuse to acknowledge the work performed by female employees, including Ms. High-Bassalik, even going so far as to outright walk out of meetings where female employees were giving presentations and stating that he would only return when such employees had stopped speaking.

68.     In keeping with Defendant Al Shihabi's discriminatory conduct, a Senior Vice President of Al Jazeera openly removed female employees from their work assignments without explanation and replaced them with male employees, even though those male employees had substantially fewer skills and qualifications for the work.

69.     When female employees complained about this discriminatory treatment, Defendant Al Shihabi habitually responded to them in a condescending and demeaning manner that was in stark contrast to the respect he showed to male employees.

70.    Defendant Al Shihabi treated these legitimate professional complaints from female employees as though such employees were simply being emotional, reflecting a stereotyped view of women generally, asking them why a female employee "didn't love me anymore" whenever they objected to his repeated discriminatory practices, and condescendingly telling Ms. High-Bassalik that she was his "sister."

71.    Al Jazeera's CLO, David Harleston, also participated in this discriminatory treatment of female employees at the Company.

72.    Mr. Harleston repeatedly questioned and belittled Ms. High-Bassalik's programming and staffing decisions, subjecting her to scrutiny on matters that were not within his professional purview, whereas he never exposed similarly situated male employees to such treatment.

73.    Mr. Harleston also publicly demeaned Ms. High-Bassalik and disparaged her professionally, screaming at her whenever she objected to his mistreatment.

74.    Similarly, Mr. Harleston created obstacles that interfered with other female employees' ability to complete their jobs, such as requiring they obtain his approval for decisions while not requiring male employees to seek the same approval.

75.    Unable to tolerate the persistent discrimination, Ms. High-Bassalik complained about Mr. Harleston's conduct, and even escalated her complaints about Mr. Harleston's discriminatory acts to Defendant Al Shihabi.

76.    Defendant refused to address the complaints made by Plaintiff and other female employees about Mr. Harleston's treatment, and Al Jazeera never disciplined Mr. Harleston for it.

**Defendant's Unlawful Retaliation**

77.     Defendant Al Shihabi and the Company have further demonstrated their hostility towards their female employees, including Ms. High-Bassalik, by forcing several of them to resign or simply terminating their employment and replacing them with male employees.

78.     By way of example only, two of the highest-ranking non-Arabic, female employees of the Company, the Executive Vice President of Corporate Communications and the Executive Vice President of Human Resources, both resigned as a direct result of the discriminatory and hostile work environment in place at Al Jazeera and fostered by Al Shihabi.

79.     Upon information and belief, both of these non-Arabic female employees made complaints about the discriminatory behavior at Al Jazeera and resigned once their job conditions deteriorated as a result.

80.     Similarly, throughout her employment, Ms. High-Bassalik repeatedly objected to the Company's misogynistic and racist treatment of its employees, until the Company and Defendant, acting in his role as Al Jazeera's Chief Executive Officer, ultimately decided to terminate her employment in retaliation.

81.     Specifically, in December 2014, Plaintiff was informed by the Company that Al Jazeera was suspending her pending an investigation.

82.     Shocked, Plaintiff asked that the Company provide her with more details about the investigation, such as what had prompted it, but Al Jazeera flatly refused, claiming that the investigation was ongoing and, as a result, she had no right to know why her employment was being suspended.

83.     Approximately one month later, after a brief, 20-minute interview with Ms. High-Bassalik, the Company informed her that it did not want her to return to work.

84.     It was only later, after Ms. High-Bassalik continued to challenge the Company's behavior, that Al Jazeera and Defendant told her, for the first time, that her employment was being terminated because she was purportedly in default of the Contract.  The Company did this despite the fact that the Contract's terms required Ms. High-Bassalik to have committed a crime or other such grossly inappropriate conduct to trigger default.  The Contract also requires Plaintiff to be given an opportunity to cure such default prior to termination.

85.     Incredibly, despite these terms, the Company and Al Shihabi claimed that the default underlying Ms. High-Bassalik's termination was that she ostensibly was an ineffective leader and did not get along with other employees.

86.     Defendant's flimsy and disputed justification for the termination of Ms. High-Bassalik's employment simply serves to further demonstrate his discriminatory and retaliatory animus towards Plaintiff.

87.     In contrast to their decision to terminate Plaintiff, Defendant and the Company merely sent one of their Arabic Senior Vice Presidents for extra training in response to complaints from both his direct reports and other employees at the Company about his discriminatory comments and conduct.

88.     Similarly, another male Senior Producer was suspended for a week after he threatened to physically assault another Al Jazeera employee.

## FIRST CAUSE OF ACTION
### (Discrimination in Violation of Section 1981)

89.     Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

90.     Defendant has discriminated against Plaintiff on the basis of her race, national origin and/or ethnicity in violation of Section 1981 by denying her the same terms and conditions

14

of employment available to employees who are Arabic, including, but not limited to, subjecting her to disparate working conditions, allowing racist and xenophobic comments in the workplace, and ultimately terminating her employment.

91.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including, but not limited to, loss of future income, compensation and benefits for which she is entitled to an award of damages.

92.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering for which she is entitled to an award of damages.

93.     Defendant's unlawful and discriminatory actions constitute malicious, willful and wanton violations of Section 1981 for which Plaintiff is entitled to an award of punitive damages.

**SECOND CAUSE OF ACTION**
**(Retaliation in Violation of Section 1981)**

94.     Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

95.     Defendant retaliated against Plaintiff in the pursuit of her protected activity and legal claims in violation of Section 1981 by, *inter alia*, subjecting her to repeated harassment and ultimately terminating her employment.

96.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, monetary and/or

economic harm, including, but not limited to, loss of future income, compensation and benefits for which she is entitled to an award of damages.

97.    As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of damages.

98.    Defendant's unlawful and discriminatory actions constitute malicious, willful and wanton violations of Section 1981 for which Plaintiff is entitled to an award of punitive damages.

### THIRD CAUSE OF ACTION
### (Discrimination in Violation of the NYSHRL)

99.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

100.    Defendant has discriminated against Plaintiff on the basis of her race, ethnicity, national origin and/or gender in violation of the NYSHRL by denying her the same terms and conditions of employment available to employees who are male and/or Arabic, including, but not limited to, subjecting her to disparate working conditions, allowing racist, sexist and xenophobic comments in the workplace, and ultimately terminating her employment.

101.    As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including, but not limited to, loss of future income, compensation and benefits for which she is entitled to an award of damages.

16

102.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering for which she is entitled to an award of damages.

**FOURTH CAUSE OF ACTION**
**(Retaliation in Violation of the NYSHRL)**

103.     Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

104.     By the actions described above, among others, Defendant retaliated against Plaintiff on the basis of her protected activities in violation of the NYSHRL by, *inter alia*, ignoring her protected complaints about the discriminatory treatment of non-Arabic and female employees, by subjecting her to increased scrutiny and harassment and ultimately by terminating her employment.

105.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled to an award of monetary damages and other relief.

106.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

## FIFTH CAUSE OF ACTION
### (Aiding and Abetting in Violation of the NYSHRL)

107.    Plaintiff hereby repeats and re-alleges each and every allegation as contained in all of the preceding paragraphs as if fully set forth herein.

108.    Defendant Al Shihabi directly participated in the discriminatory conduct perpetrated against Plaintiff, including, but not limited to, frequent use of inappropriate comments directed at her gender, subjecting her to disparate terms and conditions of employment than those of the Company's male and/or Arabic employees and ultimately terminating her employment.

109.    At all relevant times, Defendant Al Shihabi had the ability to control the terms and conditions of Plaintiff's employment, including, but not limited to, the power to terminate Plaintiff's employment.

110.    Defendant Al Shihabi knowingly or recklessly aided and abetted the unlawful discrimination and/or retaliation against Plaintiff in violation of the NYSHRL, including, but not limited to, his frequent use of inappropriate comments directed at her gender, subjecting her to disparate terms and conditions of employment than those of the Company's male and/or Arabic employees and ultimately terminating her employment.

111.    As a direct and proximate result of Defendant Al Shihabi's misconduct, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income for which she is entitled to an award of damages.

112.    As a direct and proximate result of Defendant Al Shihabi's misconduct, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem

and self-confidence and emotional pain and suffering for which she is entitled to an award of damages.

## SIXTH CAUSE OF ACTION
### (Discrimination in Violation of the NYCHRL)

113.    Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

114.    Defendant has discriminated against Plaintiff on the basis of her race, ethnicity, national origin and/or gender in violation of the NYCHRL by denying her the same terms and conditions of employment available to employees who are male and/or Arabic, including, but not limited to, subjecting her to disparate working conditions, allowing racist, sexist and xenophobic comments in the workplace, and ultimately terminating her employment.

115.    As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including, but not limited to, loss of future income, compensation and benefits for which she is entitled to an award of damages.

116.    As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering for which she is entitled to an award of damages.

117.    Defendant's unlawful and discriminatory actions constitute malicious, willful and wanton violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

**SEVENTH CAUSE OF ACTION**
**(Retaliation in Violation of the NYCHRL)**

118.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

119.    By the actions described above, among others, Defendant retaliated against Plaintiff on the basis of her protected activities in violation of the NYCHRL by, *inter alia*, ignoring her protected complaints about the discriminatory treatment of non-Arabic and female employees, by subjecting her to increased scrutiny and harassment and ultimately by terminating her employment.

120.    As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled to an award of monetary damages and other relief.

121.    As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

122.    Defendant's unlawful retaliatory actions constitute malicious, willful and wanton violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

**EIGHTH CAUSE OF ACTION**
**(Aiding and Abetting in Violation of the NYCHRL)**

123.    Plaintiff hereby repeats and re-alleges each and every allegation as contained in all of the preceding paragraphs as if fully set forth herein.

124.    Defendant Al Shihabi directly participated in the discriminatory conduct perpetrated against Plaintiff, including, but not limited to, frequent use of inappropriate

comments directed at her gender, subjecting her to disparate terms and conditions of employment than those of the Company's male and/or Arabic employees and ultimately terminating her employment.

125.    At all relevant times, Defendant Al Shihabi had the ability to control the terms and conditions of Plaintiff's employment, including, but not limited to, the power to terminate Plaintiff's employment.

126.    Defendant Al Shihabi knowingly or recklessly aided and abetted the unlawful discrimination and/or retaliation against Plaintiff in violation of the NYCHRL, including, but not limited to, his frequent use of inappropriate comments directed at her gender, subjecting her to disparate terms and conditions of employment than those of the Company's male and/or Arabic employees and ultimately terminating her employment.

127.    As a direct and proximate result of Defendant Al Shihabi's misconduct, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income for which she is entitled to an award of damages.

128.    As a direct and proximate result of Defendant Al Shihabi's misconduct, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering for which she is entitled to an award of damages.

129.    Defendant Al Shihabi's unlawful retaliatory actions constitute malicious, willful and wanton violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendant for the following relief:

A.      A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States, the State of New York and the City of New York;

B.      An injunction and order permanently restraining Defendant and his partners, agents, employees and/or representatives, and any and all persons acting in concert with them from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

C.      An award of damages against Defendant, in an amount to be determined at trial, plus prejudgment and post judgment interest, to compensate Plaintiff for all monetary and/or economic harm, including, but not limited to, loss of income, earned bonus pay, reputational harm and harm to professional reputation; for harm to her professional and personal reputation and loss of career fulfillment; for all non-monetary and/or compensatory harm, including, but not limited to, compensation for physical injury, pain and suffering, serious psychological and emotional distress, mental anguish, stress and anxiety, embarrassment and humiliation; and all other monetary and/or non-monetary losses suffered by Plaintiff;

D.      An award of punitive damages in an amount to be determined at trial;

E.      An award of Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by law; and

F.      Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: December 28, 2015
      New York, New York          Respectfully submitted,

**WIGDOR LLP**

By: _____
      Douglas H. Wigdor
      Lawrence M. Pearson
      Renan F. Varghese

85 Fifth Avenue
New York, New York 10003
Telephone:  (212) 257-6800
Facsimile:  (212) 257-6845
dwigdor@wigdorlaw.com
lpearson@wigdorlaw.com
rvarghese@wigdorlaw.com

*Counsel for Plaintiff*